FILED ENTERED
LODGED RECEIVED
AUG 23 2011
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DELORES SCOTT, #922369　　　　*

　　　　Plaintiff　　　　*

v.　　　　* CIVIL ACTION NO. L-10-461

THE DEPARTMENT OF PUBLIC SAFETY　*
AND CORRECTIONAL SERVICES
　　　　　　*
　　　　Defendant
　　　　***

## MEMORANDUM

This is Delores Scott's ("Scott") pro se prisoner civil rights case under 42 U.S.C. § 1983, presenting claims of cruel and unusual conditions of confinement. Paper Nos. 1 and 3. Pending is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by counsel on behalf of Defendants, the Department of Public Safety and Correctional Services ("DPSCS') and Gary Maynard, Secretary of DPSCS. Paper No. 14. Plaintiff has filed a response in opposition (Paper No. 16) to which counsel has filed a reply. Paper No. 21. The matter is briefed and ready for disposition; a hearing is deemed unnecessary. See Local Rule 105.6 (D. Md. 2011). For reasons to follow, this case shall be dismissed by separate Order.

I. **Background**

　A. **Plaintiff's Claims**

Scott, a former Maryland state inmate, alleges that during the time she was confined at the Baltimore Pre-Release Unit for Women ("BPRU-W') from January 2, 2007 to March 27, 2007, the facility's central heat unit was not functioning, causing her "exposure to cold indoor temperatures." Complaint, ¶ 2. She claims that the temperature in her room was 53 degrees, and that she was given heavy plastic sheets to hang on the window to block the cold air. Paper No.

3, p. 2. Scott also complains that secondhand smoke in the facility contributed to her frostbite. See id. p. 3, ¶ 3. Scott alleges that the cold temperatures caused her to develop pernio and frostbite in her fingers.[1] She claims that the frostbite has become a chronic condition.

Scott states that she complained about cold indoor temperatures to BPRU-W corrections officers, who informed her that they were aware of the problem.[2] Scott does not claim that she complained to Maynard. On February 6, 2007, Scott filed an Administrative Remedy Request (ARR) asking for heat and complaining that she was allowed only one blanket. Paper No. 3, Exhibits I-V.

Scott also claims that she was exposed to prolonged cold indoor temperatures during the time when she was incarcerated at the Maryland Correctional Institution for Women ("MCI-W"). She alleges that "[d]uring a spell of cold weather in May,"[3] her cell window was stuck and could not be closed. Paper No. 16, Plaintiff's Reply ¶ 6. She asserts that in December of 2009, she suffered another outbreak of pernio and frostbite-like symptoms like those that first occurred at BPRU-W in 2007. Paper No. 3, ¶ 3.[4] As relief, Scott requests $1 million in compensatory damages. Complaint, p. 2.

---

[1] Pernio, or "chilblains," is a localized inflammatory lesion of the skin resulting from a response to cold. See http://www.ncbi.nlm.nih.gov/pubmed/18325315. Frostbite is defined as an injury to the body that is caused by freezing. It most often affects the nose, ears, chin, fingers or toes and can permanently damage the body. See http://www.nlm.nih.gov/medlineplus/frostbite.html.

[2] Scott has filed a letter signed by Karen Wallace for Sylvester Bracey, Administrator of the Pre-Release Unit, which reads in part: "Mr. Bracey is out of the office and is expected back 2/20/07. We are working hard to resolve the heat situation." Paper No. 3, Exhibit III. The letter continues that "we are working to control the cigarette situation." See id.

[3] Although neither party provides the specific dates Scott was confined at MCI-W, Scott indicates that she was exposed to cold indoor temperatures in the mid-spring of 2007 and winter of 2008. Paper No. 3, p. 4.

[4] It does not appear that Scott was incarcerated in 2009. She indicates that she was released from MCI-W on March 7, 2008. Paper No. 3, p. 4.

B.  **Defendants' Response**

Defendants' exhibits demonstrate that Scott regularly visited the medical units at BPRU-W and MCI-W. Scott, who has a medical history of hypertension, bi-polar disorder, and depression, saw medical providers on January 2, 2007, January 27, 2007, April 2, 2007, April 3, 2007, April 12, 2007, April 19, 2007, April 22, 2007, June 5, 2007, August 2, 2007, August 6, 2007, November 5, 2007, November 7, 2007, November 21, 2007, and February 6, 2008. Paper No. 14, Exhibit A, pp. 3-86. There are no medical records from this period indicating that Scott complained to medical providers about frostbite, pernio, or cold temperatures. See id. Scott filled out sick-call requests to see medical personnel on January 22, 2007, July 18, 2007, August 30, 2007, November 4, 2007, January 14, 2008, and February 19, 2008. See id., pp. 32–36, 66. None of the sick-call requests mentions frostbite, pernio, cold temperatures, or pain in her fingers. Id.

While at MCI-W, Plaintiff was interviewed by corrections staff on January 25, 2008, and advised that her cell was heated. Paper No. 14, Exhibit A, page 2. Temperature readings were conducted on that day and several days after, and the temperature was recorded between 70 and 71 degrees. See id.

II.  **Standard of Review**

Defendants seek to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing the Complaint, the Court accepts all well-pleaded allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. See Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005); Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

3

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325-26 (4th Cir. 2001). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the Complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Thus, a Complaint need only state "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Should any of Scott's claims survive the motion to dismiss, Defendants request that the Court dispose of the case through summary judgment. To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other competent evidence to show that a genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

### III. Analysis

Defendants move for dismissal or judgment in their favor, arguing that they are immune under the Eleventh Amendment; the case is barred by the statute of limitations; Scott fails to state a claim of supervisory liability; and Scott fails to state a claim of constitutional dimension.

#### A. Eleventh Amendment

The Eleventh Amendment bars a suit for monetary damages in federal court by a private individual against a non-consenting state or its agencies, absent waiver or congressional abrogation of sovereign immunity pursuant to § 5 of the Fourteenth Amendment. See Va. Office for Prot. and Advocacy v. Stewart, 131 S. Ct. 1632, 1637-1638 (2011). The state has chosen not to waive sovereign immunity in regards to actions by DCPCS. See Md. Code. Ann., Corr. Servs. Art., § 2-101. Accordingly, dismissal of the claims against DCPCS is appropriate.

#### B. Supervisory Liability

Scott does not allege that Maynard was personally involved or had constructive knowledge of the circumstances at issue. To the extent she intends to hold Maynard liable for alleged actions by subordinate corrections officers and staff, the doctrine of respondeat superior[5] does not apply in § 1983 actions. See Monell v. New York Department of Social Services, 436 U.S. 658, 691 (1978); Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004).

To show supervisory liability, a plaintiff must show that: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link

---

[5] Respondeat superior is a legal doctrine whereby an employer may be held responsible for the actions of its employees.

between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994). As Scott does not allege any personal involvement by Maynard in the alleged conduct, nor an unconstitutional policy or custom under his supervision, there is no factual or legal basis to find Maynard liable for the alleged wrong. As such, Maynard is entitled to dismissal from this case.

### C. Statute of Limitations

There is no express federal statute of limitations pertinent to § 1983 actions. It is well-established policy that when Congress has not enacted a statute of limitations applicable to the assertion of a federal right, federal courts should adopt the local law of limitation. See Johnson v. Davis, 582 F.2d 1316, 1318 (4th Cir. 1978). Under Maryland's general statute of limitations, this action should have been filed within three years of the date the claims arose. See Md. Cts. & Jud. Proc. Code Ann. §5-101. Scott filed her Complaint on February 25, 2010. Her claims arising prior to February 25, 2007, are time-barred. However, because Scott claims to have learned of her allegedly chronic condition at a later time, the statute of limitations does not provide a basis for dismissal of this case.

### D. Eighth Amendment

The Eighth Amendment protects prisoners from cruel and unusual living conditions. See Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981). In order to state a constitutional claim premised on prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was, by objective standards, "sufficiently serious" and that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. See Wilson v. Seiter, 501

U.S. 294, 298 (1991). A prisoner alleging such culpability must prove "deliberate indifference" of prison officials to the satisfaction of those needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To satisfy the objective element of a conditions claim, the plaintiff must show that she has sustained a serious or significant mental or physical injury as a result of the challenged conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

Accepting Scott's facts as true for the purposes of the Motion to Dismiss, a valid Eighth Amendment claim has been made. Scott alleges that, because of the low temperature of her cell, she suffered a significant physical injury — namely, chronic pain resulting from frostbite — and that Defendants were deliberately indifferent to providing her with a safe level of warmth. Scott alleges that multiple correctional officers, a nurse, the Administrator of the Pre-Release Unit, his representative, and a prison psychologist all were notified of the low temperatures in her cell and the ongoing physical injuries, but no official action was taken to correct the conditions. These facts, if true, could form the basis of a valid Eighth Amendment claim, and it would thus be improper to grant Defendants' Motion to Dismiss.

To survive the Motion for Summary Judgment, however, Scott must provide competent evidence to show that genuine material issues of fact exist that could lead a reasonable jury to rule in her favor. Scott's claims are defective in two ways. First, assuming that Scott presently has frostbite or pernio, there is no evidence that those injuries are, in fact, traceable to the conditions of which she complains. There is no record that prison medical providers treated her for frostbite, pernio, or finger pain. Scott does not dispute that there is no record that she even raised her complaints of frostbite and pernio to medical personnel. In sum, there is no evidence that connects her alleged injuries to the alleged cold indoor conditions.

7

Although not dispositive, there is also scant evidence establishing a sufficiently culpable state of mind among prison officials. When an inmate makes a challenge under the Eighth Amendment, the requisite state of mind for liability to attach to prison officials is one of deliberate indifference to inmate health or safety. A prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. "The test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002).

Here, the officials' conduct is not actionable. First, there is no evidence that MCI-W officials knew of the alleged open window, so they can hardly be said to have disregarded the consequences of that condition. Regarding the broken heat (both that acknowledged by BPRU-W and alleged of MCI-W), there is no evidence that the officials knew or should have known that the condition posed an excessive risk to inmate health or safety. There is no allegation or evidence that other inmates complained of the temperatures, or officials otherwise knew that harm to Scott or any other inmate was likely.[6] Officials are not culpable for failing to meet a single inmate's preferences or to promptly respond to an inmate's complaint, so long as excessive risk of injury is not posed.[7]

---

[6] The only evidence supporting this claim is Scott's allegation that she informed a nurse of discoloration and numbness in her fingers and toes. The Court rejects this evidence because Defendants submitted uncontroverted records that do not contain any such statements. Furthermore, even if the statements to the nurse had been made, Scott notes that the nurse concluded the symptoms were "not a medical problem." Paper No. 3, p. 2, ¶ 3. Thus, officials could not know that harm was likely.

[7] Defendants also raise the affirmative defense of failure to exhaust administrative remedies. As this case is dismissible for other reasons stated herein, the Court does not address this issue.

8

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss or for Summary Judgment shall be GRANTED. A separate Order follows.

August 23, 2011

/s/
_____
Benson Everett Legg
United States District Judge